## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

VIRGINIA G.,[1]
     Plaintiff,

         v.                             Civil No. 3:20-cv-00634 (DJN)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
     Defendant.

### REPORT AND RECOMMENDATION

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"). Plaintiff, thirty-six years old at the time of her alleged onset date, has a GED and last worked as a former medical assistant. (R. at 76, 80, 87.) She contends that she is unable to work due to peripheral neuropathy, anxiety, and depression. (R. at 76, 80, 189-190.)

On July 31, 2019, an Administrative Law Judge ("ALJ") denied Plaintiff's application for disability benefits and supplemental security income. (R. at 12-24.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[3]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi should be substituted for former Commissioner Andrew M. Saul as the defendant in this matter.

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year

In her request for review, Plaintiff argues that the ALJ erred in evaluating the opinion of Dr. Daniel Gray ("Dr. Gray"). (Pl.'s Mem. in Supp. of Soc. Sec. App. 8, ECF No. 28 ("Pl.'s Mem.")). For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 27) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 32) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income on August 25, 2017, alleging disability beginning July 31, 2016. (R. at 12.) The Social Security Administration denied Plaintiff's claim on November 16, 2017, (R. at 87-89) and again upon reconsideration on March 30, 2018. (R. at 103-04, 115.) At Plaintiff's written request, the ALJ held a hearing on April 19, 2019. (R. at 33-75, 118-22.) On July 31, 2019, the ALJ issued a written opinion and denied Plaintiff's claim. (R. at 9-24.) On June 2, 2020, the Social Security Administration Appeals Council denied Plaintiff's request for review and rendered the ALJ's decision as the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's disability determination if: "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which a reasonable

of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at 207 (internal quotation marks omitted). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *See Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The court must reverse the decision if substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law. *See id*.

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations'

3

severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 14-23.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 31, 2016, her alleged onset date.[4] (R. at 14.) At step two, the ALJ determined that Plaintiff

---

[4] "Substantial gainful activity" is work that is both substantial and gainful as defined by the Agency in the C.F.R. "Substantial work activity" is work activity that involves doing significant physical or mental activities. Work may be substantial even if it is done on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than when the claimant worked before. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work activity done for "pay or profit, whether

suffered from the following severe impairments: diabetes mellitus, type II; peripheral neuropathy;

degenerative disc disease; Degos disease (skin disorder); depression; and anxiety. (R. at 15.) At

step three, the ALJ determined that none of these impairments, individually or in combination, met

or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.)

Between steps three and four, the ALJ determined Plaintiff's residual functional capacity.[5]

(R. at 17.) She concluded that Plaintiff retained the ability to perform light work with the following

limitations:

> [Plaintiff] has the residual functional capacity to perform light work
> as defined in 20 CFR 404.1567(b) except she can occasionally climb
> ladders, ropes or scaffolds, stoop, kneel, crouch and crawl. The
> [Plaintiff] is limited to simple, routine, repetitive tasks, but not at a
> production rate pace and can make simple work-related decisions.
> The [Plaintiff] can no more than frequently interact with supervisors
> and co-workers, with no tandem work, and no more than
> occasionally interact with the public.

(R. at 17.) The ALJ explained that she determined Plaintiff's residual functional capacity after

summarizing the evidence in the record and finding that the objective medical findings in the

record did not support Plaintiff's claimed levels of severity. (R. at 16-22.) Based on this

---

or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[5] "Residual functional capacity" is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

determination, the ALJ found at step four that Plaintiff's limitations prevented her from performing any of her past relevant work.[6] (R. at 22.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 22.) The ALJ weighed the testimony of the vocational expert, who opined that Plaintiff could perform the requirements of occupations such as a marker, office helper, and assembler of electrical accessories. (R. at 22-23, 65-75.) The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 22-23.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 23-24.)

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled" by arguing that the ALJ erred in evaluating the medical opinion evidence of Dr. Gray. (Pl.'s Mem. at 8-14). Plaintiff contends that the ALJ's reasoning for finding Dr. Gray's opinion unpersuasive was not supported by substantial evidence. (Pl.'s Mem. at 8-9). Defendant responds that the ALJ correctly evaluated the medical opinion evidence as part of her residual functional capacity assessment and

---

[6] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

pointed to substantial evidence in the record to support her findings. (Def.'s Mem. at 18). For the reasons set forth below, the ALJ did not err in denying Plaintiff's application for benefits.

**A. The ALJ Appropriately Assessed Dr. Gray's Opinion in Accordance with Social Security Administration Regulations**.

Plaintiff disputes the ALJ's analysis of the opinions of Plaintiff's treating physician, Dr. Gray. On March 29 2019, Dr. Gray submitted a Medical Source Statement in which he opined that Plaintiff: (1) had lower back pain, and numbness in her legs, and a slow antalgic or disturbed gait; (2) could only occasionally carry and lift less than ten pounds, and never carry or lift more than ten pounds; (3) would miss four or more work days per month due to symptoms or treatment; and (4) would need to elevate her legs to at least waist level for twenty percent of the day. (R. at 1052.) In reviewing Dr. Gray's opinion, the ALJ found it to be unpersuasive because it was inconsistent with the medical evidence in the record. (R. at 21.)

1.    The ALJ Properly Followed the Regulatory Framework That Governs Evaluation of Medical Opinion Evidence on Claims Filed After March 27, 2017.

Under the Social Security Administration regulations, the ALJ must consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record."). The regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities . . .
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration,

persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id*. §§ 404.1513(a)(2), 416.913(a)(2). A medical opinion does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id*. § 404.1513(a)(3) (defining these categories of information as "other medical evidence").

Under the regulations,[7] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1) – (5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id*. § 416.920c(b)(2).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive" the medical opinion will be. *Id*. § 416.920c(c)(2).  Similarly, for consistency, "[t]he more consistent" a medical opinion is with "evidence from other medical sources and nonmedical sources," the more persuasive the medical opinion will be. *Id*.  § 416.920c(c)(2).

---

[7] Because Plaintiff filed her disability claim after March 27, 2017, Section 416.920c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

The ALJ may explain her consideration of the other factors but is only required to do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. *See id*. § 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *See id*. Here, the ALJ's analysis conformed with the new regulations articulated above and she addressed the supportability and consistency of Dr. Gray's opinion. (R. at 21.)

> 2.   The ALJ's Evaluation of Dr. Gray's Opinion, and her Residual Functional Capacity Assessment is Supported by Substantial Evidence.

When evaluating Dr. Gray's opinion, the ALJ explained how the opinion was inconsistent with the record. (R. at 21.) The ALJ also explained that the record contained evidence showing that: (1) Plaintiff had full range of motion in her lumbar spine and lower extremities, and normal strength in her upper and lower extremities; and (2) Plaintiff's A1c levels improved following conservative medication treatment for Plaintiff's diabetes mellitus, suggesting that her symptoms from that are not as severe as Dr. Gray opined. (R. at 21.) While the ALJ acknowledged that Dr. Gray's notations supported his opinion that Plaintiff would be absent from work four or more days per month, the ALJ also found that Dr. Gray's opinions regarding Plaintiff's limitations were "an overestimation" and not consistent with the objective findings in the record. (R. at 21.)

The ALJ addressed consistency of the administrative medical findings of Eugene Noland, M.D. ("Dr. Noland"), and Bert Spetzler, M.D. ("Dr. Spetzler"). (R. at 20.) Dr. Noland and Dr. Spetzler stated Plaintiff was limited to "work at the light exertional level, except occasionally climb ladders, ropes or scaffolds, stoop, kneel, crouch and crawl." (R. at 20, 83-84, 98-99.) This determination is consistent with records from Northwestern Community Service and Sentara Health (R. at 20), and with Dr. Gray's treatment notes. (R. at 20, 83-84, 98-99, 876-969.) Additionally, Dr. Noland, and Dr. Spetzler's opinions are consistent with the record as Plaintiff

9

received conservative treatment and a diagnosis of type II diabetes with peripheral neuropathy. (R. at 20.) Accordingly, the ALJ found Dr. Noland and Dr. Spetzler's opinions to be persuasive[8]. (R. at 20.)

The ALJ determined that the limitations articulated by Dr. Noland and Dr. Spetzler are supported by the Plaintiff's medical records. However, the ALJ determined that the limitations articulated by Dr. Gray overestimate Plaintiff's limitations shown in her medical records. (R. at 20-21.) Plaintiff's records from her providers at the University of Virginia Health Systems detailed her history of diabetes mellitus and neuropathy. (R. at 356, 904.) She was diagnosed with type two diabetes in her early twenties, and later developed symptoms of peripheral neuropathy. (R. at 364, 377, 509.) Although her diabetes was poorly controlled at first, Plaintiff began to adhere to a more consistent medication regimen by January 2017 and no longer needed insulin by October 2017. (R. at 882-84, 903.)

Similarly, her neuropathy symptoms improved with medication. (R. at 903.) Plaintiff reported in 2016 and 2017 that her symptoms were aggravated by standing and sitting for more than five to ten minutes, but also being unable to walk due to pain and tenderness in her feet. (R. at 502, 906-08.) However, a nerve conduction study in June 2018 showed Plaintiff only had mild neuropathy of the lower extremities. (R. at 1045-46.) Subsequently, Plaintiff continued conservative treatment with medication. (R. at 903, 987.)  On March 29, 2019, Dr. Gray opined that Plaintiff had a slow antalgic or disturbed gait even though another medical record from around that time indicated that Plaintiff had a normal gait and was not otherwise impaired in her mobility. (R. at 1052, 1318.)

---

[8] In reviewing the evidence, the Court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner or their designate, the ALJ]." *Craig*, 76 F.3d at 589.

The ALJ determined that Dr. Gray's opinion stating the Plaintiff needed to elevate her legs at waist level for twenty percent of the day and would be absent from work four or more days a month was not persuasive as it was not consistent with the objective findings. (R. at 21.) Plaintiff asserts that the ALJ's conclusion is "befuddling as it is inconsistent", and that the ALJ failed to explain why Dr. Gray's opinion regarding the elevation of her legs and absenteeism was inconsistent. (Pl's Mem. at 14). The ALJ explained that the elevation and absenteeism opinions were "not consistent with the objective findings as discussed above." (R. at 21.) The ALJ specifically referenced the findings she had made regarding another portion of Dr. Gray's opinion and did not need to reiterate her reasoning. The ALJ is not required to use any particular language or follow a particular format in her decision. (*Woodson v. Berryhill*, 2018 U.S. Dist. LEXIS 167396, 2018 WL 4659449, at 6 (E.D. Va. Aug. 7, 2018), *report and recommendation* adopted, 2018 U.S. Dist. LEXIS 166820, 2018 WL 4658681 (E.D. Va. Sept. 27, 2018.)) The ALJ had articulated above that the opinion was inconsistent with the record as the record "reflected conservative medication treatment for diabetes mellitus, improving A1c levels, lumbar full range of motion and no muscle spasm, full range of motion of the lower extremities, as well as normal upper and lower extremity strength and tone and normal reflex and sensory functioning." (R. at 21.)

The ALJ also found that Dr. Gray's opinion overestimated Plaintiff's limitations.[9] (R. at 21.) As articulated in the section above, the ALJ's citation of Plaintiff's conservative treatment and improvement is supported by the record. Plaintiff began to adhere to a more consistent

_____

[9] In reviewing the evidence, the Court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner or their designate, the ALJ]." Craig, 76 F.3d at 589.

medication regimen by January 2017 and no longer needed insulin by October 2017. (R. at 882-84, 903.) Plaintiff's neuropathy symptoms improved with medication. (R. at 903.) She reported in 2016 and 2017 that her symptoms were aggravated by standing and sitting for more than five to ten minutes, but also being unable to walk due to pain and tenderness in her feet. (R. at 502, 906-08.) However, a nerve conduction study in June 2018 showed Plaintiff only had mild neuropathy of the lower extremities. (R. at 1045-46.) Subsequently, Plaintiff continued conservative treatment with medication. (R. at 903, 987.)  On March 29, 2019, Dr. Gray opined that Plaintiff had a slow antalgic or disturbed gait even though another medical record from around that time indicated that Plaintiff had a normal gait and was not otherwise impaired in her mobility. (R. at 1052, 1318.)

Upon review of the record and the ALJ's decision, the Court finds that substantial evidence supports the ALJ's conclusion that Dr. Gray's opinion was unpersuasive. The ALJ discussed in detail both the objective and subjective evidence that was inconsistent with Dr. Gray's opinion on Plaintiff's limitations. (R. at 21.) Further, the ALJ articulated the supportability and consistency of Dr. Gray's opinion with the record in compliance with the new regulations. *See* 20 C.F.R. § 404.1520c(c)(1). Accordingly, the undersigned finds no error in the ALJ's assessment of Dr. Gray's opinions.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 27) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 32) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge David J. Novak and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
_____

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: December 3, 2021